The next case is 122549, People v. Griffin, Agenda No. 6. Counsel, are you ready? You may begin. Good morning, Your Honors. Michael Orenstein, State Appellate Defender, representing Defendant Appellate Joseph Griffin. At the outset, Your Honors, I would like to address the posture of this case because there are a few different things going on. Griffin filed a motion for more credit against his prison terms. It was denied. On appeal, we asked the appellate court to grant monetary credit under Caballero and vacate improper fees. Both sides agreed that the fines and fees sheet needed modifying. Both sides agreed that there was jurisdiction. The appellate court disagreed and dismissed the appeal for lack of jurisdiction. Now, this appeal also addresses two different guilty pleas. One involves a gun case, which is the 12CR number, and a burglary case, which is the 13CR number. As the State notes, citing Salem, the notice of appeal in the gun case was late. We would actually concede that at this point, and we would ask that, as in Salem, this court grant supervisory relief, allowing the late notice of appeal as a proper notice of appeal. The notice of appeal was late only because the notice from the trial court notifying of the denial was late. He received a single denial notice, and it was logical for him to file a single notice of appeal within 30 days of the notice. His mistake was understandable, and we asked this court for the same supervisory relief. This court granted in Salem. Now, in this court, the parties dispute three issues. What is the final and appealable order, whether jurisdiction are vested in the appellate court, and whether this court should retain this decision in people v. Caballero. The first issue is whether there's a final and appealable order. As a Cook County State's attorney agreed in the court below, the answer is yes. Griffin's motion raised the issue of sentence credit. He filed a motion, and he got a judgment. A judgment is defined by Rule 2B2 of this court's rules as a decree determination decision or order or portion thereof. This was an order, and it was a decision denying my client's motion. It was also a final order. Yeah. Maybe I interrupted you. Not every decision, not every order is a final order. Yeah. My argument is it's a final order because it resolved the issue my client raised in his motion. He asked for essentially double consecutive sentence credit. If the trial court properly denied him the sentence credit, the trial court resolved the motion issue. Nothing remained to address. So under the Shannul case, it is a final and appealable order. Now, the appellate court found that there was no jurisdiction under Rule 604D. But 604D has nothing to do with this case. First of all, this court has repeatedly found that Rule 604D is a waiver bar that is non-jurisdictional. That's in Flowers and William M. Second, Rule 604D applies to challenges to guilty pleas and to sentences. But my client does not ask to vacate his plea. My client does not ask to reduce his sentence. He merely asks for credit against his sentence. So the original motion filed by the defendant really wasn't directed against the substance of the circuit court's judgment? It was not directed. Well, there are judgments and there are judgments. It was not directed against the judgment of conviction or the judgment of summary. You might say the primary judgment or the most important judgment. But I would say that it was not directed against that judgment. Yeah, that's right. It was not directed against that judgment. But the denial of the order, we would argue, is its own judgment. So because nothing remained to address, it was a final and appealable order. And the appellate court is so found, in the case of people v. White. So as far as 604D, White also says that 604D does not address minimus correction motions. So unless there are other questions about final and appealable, I will go to revestment. Revestment, Your Honor, is not necessary for monetary credit relief under Caballero, as everyone agrees. But revestment is necessary for fee relief because Griffin did not challenge his views below. Now, revestment has three elements, active participation by the parties without objection, and proceedings inconsistent with the original judgment. Here in the appellate court, all three elements were met. Both sides participated in this appeal, including discussion of the improper fees. Neither side objected to this discussion. And most important, both sides agreed that the judgment had to be modified. Now, the central issue here, as we see it, is whether jurisdiction can revest in the appellate court. The answer is yes, because revestment is an equitable doctrine, and it exists to serve the purposes for which it was created. Its purpose is to create a safety valve for unreachable, yet obvious and undisputed errors. Errors are things that are normally found on appeal when people are looking for errors. The appellate counsel already has a case, and they can find errors, and appellate revestment allows these errors to be fixed. You seem to have a very broad view of this, that the appellate court can look for issues that it wants to address, and if they feel they have to fix it, they can. There's no limitation on an appellate jurisdiction? There is a definite limit. I would say I'm not taking a broad view of this. I'm taking the same narrow view as the state is, except we're saying that the same rules apply in the appellate court. The appellate court cannot simply do what it wants unless both parties agree. The state has to agree. In the case of a fine or fee, for example, the state would have to agree that the fine or fee was improper for a revestment to occur. The appellate court cannot do it on its own. So also the three elements that apply in the trial court we argue apply in the appellate court. And so no, the appellate court cannot do it on its own, if that answers your question. So a notice of appeal comes from a judgment, and the parties agree about something else, and therefore the appellate court can fix something else. Is that what you're saying? Appellate jurisdiction is constitutional, right? That is true. I would say that trial court jurisdiction is also constitutional, and this is an equitable, and revestment is considered an equitable exception to, and there's no reason that it cannot also be considered an equitable exception in the appellate context. So one other thing we would note is that in the appellate court, the Cook County state's attorney's office agreed that jurisdiction should revest. The appellate court reversed its position, but it is the state's attorney's offices who will have to live with this court's decision, and the pro se feelings that will follow if attorneys can't resolve things on appeal. Counsel, your revestment argument is an alternative argument? Well, it's an argument directed to the fees. There's two kinds of relief my client is seeking. He's seeking Calvary or accredited against his fines, and he's seeking there are two improper fees. I think one was a conservation fee or something like that. And so the revestment would only go to the fees. It's not necessary that it goes to the fines because fines are already covered by Calvary. I guess if this court agreed to repeal Calvary, then yes, in that situation it would be improper, and we would be asking for revestment for all of it. But if we agree with your Calvary argument, we still have to go to revestment with respect to the fees? Only with respect to the fees. That is correct. So unless there's any other questions, I will go to Javier. Your Honor, the only thing, I think this has been briefed, and the issues are not ambiguous. The only point I would point out is the state argues that Javier has sort of overwhelmed the important courts. It cites a Rush Law search that reveals 75 per diem credit cases in the past 10 years. I would note, however, that that search does not appear to be limited to Caballero cases. I shepherdized Caballero yesterday, and there were 210 cases. But even given the 735 cases, if you do the math, that's one and a half, about one and a half cases per appellate justice per year, not a questioning burden. And the only other thing I would mention is that the state, at our position as a state, has the whole thing backwards. It thinks that if judges, prosecutors, and counsel face less appellate scrutiny, they will be more careful when doing the fines and fees sheets, and we would argue experience teaches the opposite. So unless there are any further questions about that, in closing, we would say that this court should consider the broader implications of the final appealable order issue. The opinion below starts off by bemoaning the fines and fees litigation, and it then uses jurisdiction as a tool to reduce this litigation. But except for Caballero, this case is not really about fines and fees. It's about the right to appeal any subsidiary orders, no matter how final. For example, collections proceedings, perhaps, or anything that can happen after a divorce decree. Judges make mistakes, including clerical mistakes, mistakes to why we have a right to appeal. And before using jurisdiction as a tool to reduce appellate court workload, this court should think long and hard about restricting the right to appeal. Thank you. Thank you.  May it please the Court. I'm Assistant Attorney General Daniel Lewin for the People. Because the appellate court correctly concluded that it lacked jurisdiction, we asked this court to affirm it. Defendant was seeking to appeal from an order denying his motion to amend the minimus, which was not a final judgment and therefore was not appealable. And to see why, it's important to be precise about what a minimus is, what its role is in a criminal case, and what defendant was asking for when he asked the circuit court to amend his minimus. A minimus is a clerical document that tells a custodian, usually the Department of Corrections. Counsel, isn't the minimus no longer in existence? Is it part of the same order of the judge? I mean, it's not a separate document any longer. The minimus still exists and it is still a separate document, but by statute it is a copy of the judgment. It's a copy of the judgment. Correct. But it's still its own physical document. And courts still have authority to change them if there's some error in them. Now, there oughtn't to be an error because under Section 218.01 of the Code of Civil Procedure, the minimus is still a photocopy of the judge or some kind of copy of the judgment, but it's still its own physical document. And I think the easiest way to understand is to think about the mechanics of getting a defendant from his sentencing, to the custody of the Department of Corrections. Obviously, a defendant can't just show up at IDOC and IDOC knows in some sort of platonic way who this is and how long they're supposed to hold them. They need some guidance. The guidance given to them is this physical document called the minimus, which is now by statute just a copy of the judgment. Just a copy, but not a second document. It's a copy of the first act, of the judgment. Correct. But it's not a separate. The content is not supposed to be separate, but it is still physically separate. The document that is delivered on the bus with the defendant or faxed over to the Department of Corrections, that is the item called the minimus. The judgment is its own separate thing, even though one is a copy of the other. So when parties are asking the courts to amend the minimus, it's akin to asking them to fix some clerical error in, for instance, the online docket. The minimus is a copy of the judgment, but it's still a physical document that's a reference guide for the Department of Corrections that says who this person is, how long they're supposed to be in prison, under whose authority. Clearly, is the courts a copy of the court's order? Yes. So certainly the court continues to have jurisdiction over its own order in order to correct errors. It has continuing jurisdiction over its own records. A court's jurisdiction over substantial matters dissipates after a certain amount of time, 30 days plus whatever, totally. So in that sense, the court doesn't retain jurisdiction to amend its judgment, but it does maintain sort of residual housekeeping jurisdiction. So, for example, the minimus does not accurately reflect or there's some error in the minimus? Correct. And you would agree that the trial court has jurisdiction to do that? Yes, Your Honor. But that's really a feature of it being clerical. It's well established that the circuit court loses jurisdiction to resolve any substantial matters within a certain period of time after it's entered its final judgment. It's after 30 days, isn't it? Correct, plus tolling. To correct any judgment? Correct, Your Honor. When you say substantial matters, you mean non-clerical matters? Yes, Your Honor. So anything that would affect the legal rights and responsibilities of the parties, that was encompassed in the judgment. So these non-substantial matters, we'd say as a sort of shorthand of figuring out what sorts of things are litigation that can end in final judgment and what sorts of things are clerical matters, a handy shorthand is anything that the circuit court retains residual jurisdiction over after the time has expired to modify its final judgment is not itself going to be justiciable controversy in the constitutional sense and is not going to result in a final judgment, minimus. So it's not reviewable? The trial court looks and says, oh, wait, there's a mistake here. I'm going to fix this mistake. That's not reviewable? It's not reviewable by the appellate court. So the appellate court has a specific limited role under the Constitution to review final judgments and those other orders that this court provides for by rule. A defendant who, in the hypothetical where a trial court has wrongly denied some sort of clerical motion, a defendant is not without recourse. He just can't bring it direct or she can't bring it directly to the appellate court. And bring it to the trial court's attention, a second motion? Yes. To correct the minimus? Your correction judge was wrong? Yes, Your Honor. A trial court retains, as this court has explained in sort of an unbroken line of cases from the post-war period to today, a trial court can issue an amended minimus at any time. Another avenue for defendants who are wrongly denied minimus correction motions, which, again, there's no contention that this was wrongly denied, but in that hypothetical, a defendant would be able to, if, for instance, on the basis of an incorrect minimus, he were held beyond his real prison term under the judgment, he would be able to file an action for habeas corpus. If he didn't want, or she, my apologies, Your Honor, if the defendant didn't want to wait until the prison term was supposed to be over, they could file a complaint for mandamus in the circuit court. Or if what they were really focused on was fixing the clerical record for some reason, they could file a mandamus against the circuit court in this court. There are a number of remedies available to defendants who believe there's something wrong with the clerical record of the circuit court, that the circuit court doesn't resolve for them in their favor in the first instance, but an appeal is not one of them. And that's because the appellate court is limited by the Constitution to reviewing final judgments and other orders as provided by this court, which there's no dispute that an order disposing of a motion to amend the minimus one way or the other is not one of those special orders. So when defendant counters that this finally resolved his question over whether to get more credit, I think that's misdescriptive of what the defendant was actually seeking. If you look at page C144 of the record, the defendant is saying, My judgment is perfect. I have no qualms with that. But for some reason, the Lawrence Correctional Center Records Department is under the mistaken impression that I'm entitled to less credit than the judge actually gave me. The defendant was not asking for more credit. He was asking for the credit he was already given, which he believed a clerical error was stopping him from getting. Now, it turns out he was wrong, but the relief that he was requesting was clerical in nature, and therefore an order disposing of that relief was not a final judgment in the constitutional sense and therefore was not appealable. Am I correct about this? The issue before the circuit court was a correction of his minimus for something, I forget what, and then he appealed and then raised a different argument, correct? Yes, Your Honor. How does that change the analysis? I think the jurisdictional analysis is tied only to what the defendant was requesting in the circuit court. There are sort of the body that is taken up by the appellate court, whether or not it has jurisdiction over that is focused on what happened in the circuit court. So this is this problem again about once it gets to the appellate court, the appellate court can look at anything, do anything, way beyond what was before the trial court. We dispute that it can do anything, but we think it's properly conceived of as two separate questions. One is was this a final judgment or appealable for some other reason? And then two, what does the appellate court have power to do now that it has this appellate case? We think the first question, the answer to that is no, regardless of what defendant is raising in the appellate court. But we also argue in the alternative that there are significant problems with the items defendant was raising in the appellate court, that they were defaulted. But we do think they're two distinct questions. But the argument is the state didn't make that argument in the appellate court. No, we did not. However, we are nonetheless allowed to make them in this court for a few reasons. The first is that, as we cite Veronica C., the winning party below is allowed to make any argument in support of the judgment below. We're now defending the appellate court's judgment. This understanding is supercharged when the issue is jurisdictional, which cannot be made by parties' consent. Under People v. Holmes, for example, the principles of waiver and forfeiture don't apply to jurisdictional principles. And therefore, we think we're within our rights to make these arguments here, especially because we don't think this court can be bound to take a certain proposition of law by estoppel. This court has to determine the law for the state, and this, we believe, is the best presentation of the law. Can we invoke our equitable powers to consider these questions? Your Honors, can invoke supervisory authority. And as the defendant notes, he's requested supervisory review based on the late notice of appeal. We have no objections to that. Beyond that, when looking at the merits of these issues, if I'm understanding Your Honors' question correctly, defendant hasn't presented the merits of his whether to knock off the fees or whether a credit should be applied against what he considers to be fines. That's not presented to this court, so we don't think that this court should exercise a review of the merits of the claims. Because we don't have a complete record? Your Honors, don't have briefing of those, of the merits of the issues. Defendant has only asked for review of the jurisdictional decision below, and we've asked for this court to reconsider it. Defendant's alternative theory of jurisdiction is that the appellate court had revestment jurisdiction, which we oppose here. Revestment is, as this court cautioned in Bailey, it's to be applied narrowly, and this court has never extended the doctrine of revestment to the appellate court, and we don't think it's appropriate to do so. There's a couple of reasons. The first of which, and perhaps Occam's razor in this case, is that revestment applies only when a court had jurisdiction but lost it due to the passage of time. Only then does revestment kick in, this equitable exception, allowing the parties to come back to the court where they already were and say, hey, we found an error under certain circumstances. That wasn't the case here. There was no earlier appeal in this case, and so this is not a case of revestment in the appellate court. It would be investment. It would be essentially the parties consenting to jurisdiction for the first time in the appellate court, and we have bedrock principles of appellate jurisdiction that that's not something parties can do. So that's the easiest way to dispose of this. We also note several reasons why revestment shouldn't be extended to the appellate court, and one of the most important of them is because revestment is an equitable doctrine where parties can already revest in the circuit court. There's no equitable additional benefit to allowing them to also revest in the appellate court. So if we disagree and we say the appellate court had jurisdiction, it did not reach the merits, we'd remand it to the appellate court. Yes, Your Honor. And then what would happen? Wasn't there a concession? It's possible there would be another concession in that case, but defendant hasn't asked for the relief of this court knocking off his fees or applying the credit. So it's likely it would just steam ahead, but we don't think it's appropriate without new briefing from the parties to grant that relief here. So you would say if we were to say the appellate court had jurisdiction that we would remand? Yes. That's our understanding. And a final note on the jurisdictional issue. Defendant argues that revestment is only an issue for the fees challenge and not the fines challenge. Jurisdiction is a prerequisite for all challenges. So even though Caballeros, the current state of the law says that defendants can raise the per diem credit in any court at any time, that only applies to courts with jurisdiction in the first instance. There's pretty strong language about this in People v. Flowers that a court without jurisdiction doesn't have any authority to fix anything because its own order would be void. So the jurisdictional question is a prerequisite. If there's not appellate jurisdiction and if there's not revestment jurisdiction, this court can't use Caballero to award the credit. If Your Honors have no further questions. I have one on Caballero. You want it revisited because you thought it was wrongly decided, right? Well, we did oppose the decision at the time, but we've presented reasons that we think qualify under SHARP as special justification. It's not only because I thought it was wrongly decided, right? But having said that, in revisiting Caballero, I lost that battle, and the majority reached the result as a matter of statutory construction, right? And that's where stare decisis considerations are at their apex because the legislature is always free to amend the statute if it disagrees with the court's opinion. So how would stare decisis principles be impacted if this court was to revisit Caballero? We do acknowledge that stare decisis expresses a strong preference, and its preference is at its strongest when it's a case of statutory construction, which Caballero is. Stare decisis nonetheless permits for decisions to be reconsidered on a showing of special justification, good cause, or compelling reasons. And obviously, we'd have the strongest burden to make that showing in this case. We think we can satisfy that because of the change in the legal landscape and the undermining of the policy considerations that animated Caballero are the two main points we want to point out. So the first is that the common law backdrop against which this court was interpreting the General Assembly's intent was that we had the void sentence doctrine, which meant that per diem credit was going to be, on this court's interpretation, one of virtually any statutory sentencing challenge that could be raised in any court at any time. After Castleberry, that is now gone, and Caballero stands alone. It's now only the per diem credit. We think that merits revisiting what the General Assembly intended, whether it intended not, as this court thought in 2008, to just put this on par with every other sentencing challenge, but instead to put it standing alone as the only claim that can be raised in any court at any time. The second is the unworkability is a recognized reason to reconsider an opinion under stare decisis. And the policy consideration in Caballero is that this would be the most efficient way. If litigants just want to give the issue to the court, the fastest way to resolve it is immediately in whatever court it's presented to. And we think that the explosion of Section 110.14 cases in the appellate court after Caballero demonstrates that this has not represented an efficiency gain. This court has told litigants that they don't need to resolve this where it's most easily resolved in the sentencing court, but instead can wait to handle it on appeal. And we think that that has represented a systemic drain on the efficiency of our judicial system. If this court has no further questions, we'd ask that this court to affirm on the jurisdictional grounds or in the alternative because the fee claims are forfeited and the fine claims should be forfeited upon reconsideration of Caballero. Thank you, Your Honor. Thank you. Bye. Counsel, can I ask you on the denial of the motion to amend the minimus, being final or not. Right. The appellate court in this case disagreed with White, right, who had a contract. That's correct. And what was their, in shorthand fashion, what was their analysis of White? Okay, so in White, the defendant pled guilty to forgery. They said that a trial court retains jurisdiction to consider nonsubstantial matters, such as an amendment of the minimus after it has otherwise relinquished jurisdiction. For that, the authority decided this court's decision to people be vacant. So White would find it fine? White would find jurisdiction. That's correct. Because the logic I believe is that because the trial court, and I want to use the trial court to consider this motion, because the trial court considered this motion, the appellate court could review the denial of the motion. I believe that's the logic. So there are three points. First of all, as far as what this motion actually was, the state, and I didn't, I may not have gotten it quite, but the state seemed to be saying that this was a motion directed toward the Department of Corrections. And I just want to clarify what he asked for. He argued that in both cases, he should have received time to serve credit beginning on a certain date, May of 2012. But in the burglary case, it was only 2013. So he was arguing that the credit should have been parallel in both cases. So, I mean, there were questions about what is a minimus and a correction of the minimus. Minimus, I mean, to a certain extent that motion for correction of the minimus is shorthand in the circuit court, especially in the quarter court county. It can mean two things. It can mean a not-quote-cut motion. In other words, the trial court orally said, I give you 500 three days of credit, but the written order says 305 days. And so you're correcting the written to conform to the oral. Or it can mean what would meant people would be white and people would be red, which is a mistake the trial court made at the time, a clerical mistake dealing with the credit. And although it's called a motion to correct the minimus and that's its label, it's really a motion to correct a sentence credit. And that's what his motion was, and that's what was denied. And that's what we're asking to be appealed. The only other point I would make is in terms of the suggested remedies that the state suggested instead of a direct appeal, they suggested two things. They suggested further proceedings in the circuit court, another motion, a habeas corpus petition, or a mandamus petition in the trial court. And the problem with that is those are all essentially motions for reconsideration. The trial court having made its decision is not likely to, if there was an error, is not likely to reverse just because it's presented in a different format. The other suggestion that the state had was a mandamus petition to this court. And I would suggest that it's not a really good use of this court's resources, and it's unnecessary given that a direct appeal can resolve, and is designed to resolve errors in a judgment below. And we believe this is a judgment below. And it was a final judgment. And unless there are other questions, I would ask that this court, as was mentioned before, the relief in any case would be a remand to the merits without jurisdictional issues. Thank you. Thank you. Case number 122549, People v. Griffin, will be taken under advisement. That's agenda number six. Mr. Orenstein, Mr. Lewin, we thank you for your arguments this morning. You are excused.